UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Ford Motor Credit Company,    :
                              :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,          :
                              :    CIVIL ACTION NO. 07-2852
     v.                       :
                              :        **OPINION**
Rudolph M. Chiorazzo,         :
Jason Chiorazzo,              :
John Chiorazzo,               :
Kathleen Chiorazzo, and       :
South Shore Auto World of     :
Mayslanding, Inc.             :
                              :
          Defendants.         :
                              :
                              :

**APPEARANCES:**

DAY PITNEY, LLP.
BY: Scott A. Zuber, Esq.
P.O. Box 1945
Florham Park, NJ 07932-1945
     Counsel for Plaintiff

MITTS MILAVEC, LLC.
BY: Maurice R. Mitts, Esq.
     Todd Alan Ewan, Esq.
     Julie B. Master, Esq.
Two Logan Square
Eighteenth & Arch Streets, 12th Floor
Philadelphia, PA 19103
     Counsel for Defendants

**Irenas**, Senior District Judge:

     Plaintiff, Ford Motor Credit Company ("FMCC"), initiated

this action (the "2007 action") in the District Court of New

Jersey on June 19, 2007.[1]  Before this Court is Defendants'

_____

     [1]  The case was originally assigned to Judge Simandle,
D.N.J., but was transferred to Judge Irenas on August 28, 2007

1

motion to dismiss, stay, or consolidate.  The crux of Defendants'
argument is that this action arises out of the same set of facts
as does an action filed with this Court in 2006 (the "2006
action").  The facts underlying both actions are set forth below.


## I.

On July 28, 1997, South Shore Ford, Inc. ("South Shore
Ford"),[2] through its owner, Rudolph Chiorazzo ("Rudolph"),
entered into a Wholesale Financing and Security Agreement
("Financing Agreement") with Volvo Finance North America, Inc.
("Volvo Finance").[3]  The Financing Agreement extended credit to
South Shore Ford, a car dealership, to finance the acquisition of
inventory for sale or lease to retail customers.[4]  (Compl. ¶ 16).

---

(Docket #22).  The Court has diversity jurisdiction over the 2007
action pursuant to 28 U.S.C. § 1332.  Venue is appropriate under
28 U.S.C. § 1391(a).

[2]  South Shore Ford is neither a party to this action, nor
to the 2006 action.

[3]  The Financing Agreement was a loan originally made
between Volvo Finance and South Shore Ford.  FMCC, however,
assumed credit interest after taking over Volvo Finance.

[4]  Pursuant to the Financing Agreement, South Shore Ford
would be in default if, among other things, it: (a) failed to pay
when due any principal of or interest on any obligation or any
amount payable by it under the Financing Agreement or any
promissory note made or endorsed by South Shore Ford in
connection with the Financing Agreement; (b) failed to perform or
observe any other obligations in the Financing Agreement; or (c)
breached any other term, condition or covenant in the Financing
Agreement or other agreement between Volvo Finance and South
Shore Ford.

Rudolph and Kathleen Chiorazzo each signed individual guaranty agreements to secure the obligations set forth in the Financing Agreement.  (Compl. ¶ 20).  In addition, South Shore Auto World of Mays Landing, Inc. ("Mays Landing"), also owned by Rudolph, signed a corporate guaranty.[5]  (Compl. ¶ 25).  FMCC alleges that Volvo Finance could freely transfer or assign its rights and obligations under the Financing Agreement and the Guaranties, and did transfer or assign those rights to FMCC in 1999.

At some point in 2005, Rudolph transferred all of his shares of Mays Landing stock, totaling one hundred percent, to his sons, John and Jason Chiorazzo.[6]  Subsequently, South Shore Ford, unable to maintain timely payments to FMCC, breached the provisions of the Financing Agreement.  FMCC initiated default proceedings by sending out three Notices of Default and Demand for Immediate Payment Letters to South Shore Ford and the Defendants/guarantors.  (Compl. ¶¶ 31-33).  None have cured or explained the default.  (Compl. ¶ 33).

On July 13, 2006, South Shore Ford filed for bankruptcy under Chapter VII of the Bankruptcy Code, in the United States

---

[5]  The individual and corporate guaranties held the signatories jointly and severally liable for the total amount of the loan in the event of a default on the Financing Agreement by South Shore Ford.  (Compl. 2006 Ex. B, §1; Ex. C, §1).  Similar to the Financing Agreement, FMCC obtained Volvo Finance's interest in the two guaranty agreements as well.

[6]  FMCC claims the shares, at the time of transfer, were worth between three and six million dollars.  (Compl. ¶ 40).

Bankruptcy Court for the District of New Jersey.[7]  Subsequently,
FMCC initiated two actions.  First, on July 24, 2006, FMCC filed
an action with Judge Irenas, D.N.J., against Defendants Rudolph
Chiorazzo, Kathleen Chiorazzo, and Mays Landing.  FMCC alleged
breach of the individual guaranty agreements (Counts One and
Two), and breach of the corporate guaranty agreement (Count
Three).[8]

On June 19, 2007, FMCC filed a second action in the District
of New Jersey against the Defendants listed in the first action,[9]
as well as Jason Chiorazzo and John Chiorazzo.  The 2007 action
also arises out of the Chiorazzo's failure to pay money they
allegedly owe to FMCC as a result of the Financing Agreement and
guaranty agreements they signed.  The basis of the 2007 action,
however, is that the 2005 transfer of one hundred percent of the
Mays Landing stock from Rudolph to John and Jason was fraudulent.

The 2007 action, alleging violations of New Jersey's Uniform
Fraudulent Transfer Act ("NJFTA"), N.J. Stat. § 25:2-20 *et seq.*,
contains allegations that Rudolph and his two sons engaged in an

---

[7]  This action is still pending in Bankruptcy Court.
Additionally, on November 14, 2007, FMCC initiated an adversary
proceeding in Bankruptcy Court against the Chiorazzos and the
approximately twenty-one companies and trusts they purportedly
own.

[8]  It also seeks attorneys' fees and costs (Counts Four,
Five, and Six).

[9]  Kathleen Chiorazzo, however, was not named as a defendant
in the second action.

intentionally fraudulent transfer (Count One) and a
constructively fraudulent transfer (Count Two).  FMCC further
alleges that Defendants' conduct constitutes a common law
fraudulent transfer (Count Three).  FMCC requests appointment of
a receiver to conserve and marshal Mays Landing's assets (Count
Four); a constructive trust of Mays Landing's sale proceeds
(Count Five); and a constructive trust of Mays Landing's stock
(Count Six).  Both the 2006 and 2007 actions are currently
pending before this Court.

Presently before the Court is Defendants' motion to dismiss
the 2007 action for failure to state a claim upon which relief
can be granted pursuant to Fed. R. Civ. P. 12(b)(6); failure to
plead fraud with particularity under Fed. R. Civ. P. 9(b); and
lack of subject matter jurisdiction under Fed. R. Civ. P.
12(b)(1).  In the alternative, Defendants request that the action
be stayed until final resolution of the bankruptcy litigation and
the 2006 action, or that the 2007 action be consolidated with the
pending 2006 action.  For the reasons set forth below, this Court
will deny Defendants' motion.

## II.

When considering a motion to dismiss, the Court must accept
as true all well-pleaded allegations in the Complaint and view
them in the light most favorable to the Plaintiff.  *See Scheuer*

5

*v. Rhodes*, 416 U.S. 232, 236 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true any and all reasonable inferences derived from those facts.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).  In addition to the allegations of the Complaint, the Court may consider documents attached to or specifically referenced in the Complaint, and matters of public record, without converting the motion to dismiss into one for summary judgment.  *See Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004); *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

## III.

Defendants move to dismiss the 2007 action on three grounds.  First, Defendants argue that FMCC failed to plead fraud with particularity.  Under Fed. R. Civ. P. 9(b), when alleging fraud, all "circumstances constituting fraud . . . shall be stated with particularity, . . . [whereas] . . . intent, knowledge, and conditions of the mind [may] be averred generally."[10]  *See also Cramer v. Gen. Tel. & Elecs. Corp.,* 582 F.2d 259, 273 (3d Cir. 1978).  The purpose of Rule 9(b) is to "place the defendants on

---

[10]  Rule 9(b) is applicable to federal as well as state laws governing fraud.  *Christidis v. First Penn. Mortgage Trust,* 717 F.2d 96, 99 (3d. Cir. 1983).

notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984).  When applying Rule 9(b), courts should not focus exclusively on the "particularity" language because doing so "fails to take [into] account the general simplicity and flexibility contemplated by the rules." *Christidis,* 717 F.2d at 100.  Although the requirement that a party state the circumstances constituting fraud may be fulfilled by alleging the date, place, and time of the fraudulent behavior, the plaintiff is free to use alternative means to inject precision and substantiation into its allegations. *See Seville*, 742 F.2d at 791.

FMCC alleges that Rudolph transferred one hundred percent of his Mays Landing stock to his sons with actual intent to either hinder, delay, or defraud his creditors, and without receiving a reasonably equivalent value in exchange.  FMCC asserts that Rudolph should have reasonably believed that he was going to incur debt, that the transfer rendered him insolvent,[11] and as a result of the transfer he reasonably should have believed that he would incur debts beyond his ability to pay.  But for the transfer, FMCC claims it would have been able to use Rudolph's

___

[11]  Proof that a debtor became insolvent shortly after a transfer is one factor a party can rely on in proving fraudulent intent.  N.J. Stat. § 25:2-26(i).

interest in Mays Landing as partial repayment of the loan, and as a result of the alleged fraudulent transfer, FMCC suffered damages.

Defendants contend that these allegations provide insufficient detail because they do not state the exact time, place, or circumstances of the alleged fraudulent transfer.  This overstates the particularity requirement.  In *Seville*, an industrial plant charged a corporation with state claims of fraud relating to a series of transactions that included the sale of some seven hundred pieces of industrial equipment.  *Id.* at 787.  The Third Circuit held that the complaint, which contained a list of the industrial equipment that was the subject of the fraud,[12] met the requirements of Rule 9(b).  *Id* at 791.  Similarly, a complaint containing the approximate year and month of an allegedly fraudulent misrepresentation and a general statement of intent was found to be sufficient under Rule 9(b).  *See Florian Greenhouse, Inc. v. Cardinal I.G. Corp,* 11 F. Supp. 2d 521, 526 (D.N.J. 1998) (noting that a plaintiff need not speculate about a defendant's motives when pleading fraud).  *Id.*[13]

---

[12]   The complaint included the list of equipment as a series of exhibits and matched those items to the specific types of fraud alleged.  *Seville*, 742 F.2d at 791.

[13]   Additionally, the court in *Hunt v. Schotz, Simon, Miller, & Co.,* No. 87-2520, 1988 U.S. Dist. LEXIS 17320, at *7-8 (D.N.J. Aug. 15, 1988) found that fraud was pled with particularity.  The plaintiff, a corporation that was audited by the defendant auditing firm, alleged that defendant failed to

FMCC has described the allegedly fraudulent transfer, including the approximate time that it occurred, the people to whom the transfer was made, and the amount and type of value transferred.  Furthermore, FMCC need only plead fraud generally when stating allegations of Defendants' intent or motive in transferring Mays Landing's stock.  *See* Fed. R. Civ. P. 9(b).  FMCC's allegations are sufficient to put Defendants on notice of their alleged misconduct.  Accordingly, this Court holds that FMCC has pleaded fraud with sufficient particularity.

## IV.

Next, Defendants seek dismissal of the 2007 action pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the allegations are not ripe for review.  FMCC has alleged that: (1) Rudolph and Mays Landing are guarantors of South Shore Ford's obligations to FMCC; (2) South Shore Ford is in default; and (3) Rudolph and Mays Landing, as guarantors, owe FMCC over twelve million dollars.  (Compl. ¶¶ 16-29, 37).  A court determines whether a claim is ripe based upon (1) the fitness of the legal

---

follow generally accepted procedures with regard to checking and accounting, and failed to adequately check its figures with respect to accounts receivable.  Since the complaint alleged the manner in which defendant departed from the general procedural norms and cited specific accounts that existed but were not reported by the firm, the court found that the facts were sufficient to give the defendants notice of the alleged fraud.

issues for determination, and (2) the potential hardship to the parties if the court withholds consideration.  *See Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967).

Defendants argue that final adjudication of the bankruptcy litigation and the 2006 action is necessary to determine the amount of debt owed, if any, to FMCC, before FMCC can bring its 2007 action.  A contingent creditor, however, may commence an action without a final adjudication or finding of the precise amount of debt due.  *Cf. Bath Unlimited, Inc. v. Ginarte et al.,* No. 04-03919, 2005 WL 2406097, at *11 (D.N.J. Sept. 29, 2005)(holding that an action alleging fraudulent filing of workers' compensation claims was ripe even though the underlying workers' compensation claims were not yet decided).

New Jersey's statutory language defining fraud further suggests that the 2007 action is ripe for review.  A "claim" brought under the NJFTA is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  N.J. Stat. § 25:2-21.[14]  Determining whether a particular transfer is

---

[14]  Under the NJFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or b. Without receiving a reasonably equivalent value in exchange for the transfer or

fraudulent only requires a court to answer two questions: whether the debtor has placed some asset beyond the reach of its creditor which would have been available to it at some point in time but for the conveyance; and whether the debtor has transferred property with an intent to defraud, delay, or hinder the creditor. *See Gilchinsky v. Nat'l Westminster Bank N.J.,* 159 N.J. 463, 475 (N.J. 1999).

Furthermore, under New Jersey's receivership statutes, upon which part of this action is based, the definition of "creditor" supports the Court's determination that the action is ripe for review. *See* N.J. Stat. § 14A:14-1(b) (a "creditor" is a "holder of any claim, of whatever character, against a corporation, whether secured or unsecured, matured or unmatured, liquidated or unliquidated, absolute or contingent.")

Lastly, the potential hardship on the parties if the Court withholds determination is great, due to FMCC's allegations that their assets are being dissipated, transferred, and distributed to their detriment. (Compl. ¶¶ 65, 68). Accordingly, the Court holds that FMCC's allegations are ripe for review, regardless of whether there has been a final adjudication of related

---

obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due." N.J. Stat. § 25:2-25.

proceedings.  Defendants' motion to dismiss under the ripeness doctrine will be denied.

**V.**

Defendants next argue that FMCC's 2007 action is barred by the Entire Controversy Doctrine (the "ECD").  This Court must decide whether the ECD is the appropriate preclusion law for two successive diversity actions still pending in federal court.  We hold that it is not.

The ECD, codified in New Jersey Court Rule 4:30A, states that "non-joinder of claims required to be joined by the [ECD] shall result in preclusion of the omitted claims to the extent required by the [ECD]."  Under the ECD, "a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action."  *Paramount Aviation Corp. v. Augusta,* 178 F.3d 132, 137 (3d Cir. 1999).

The general rule is that the preclusive effect of a judgment is determined by the preclusion law of the issuing court. *Paramount,* 178 F.3d at 135.  The Third Circuit, in *In re Kaplan*, 143 F.3d 807, 814-15 (3d Cir. 1997), held that federal law governs the preclusive effect of a prior diversity judgment on a subsequent federal question case.  As the *Paramount* court opined,

however, this rule should also apply to successive diversity actions.  *See Paramount,* 143 F.3d at 146; *see also Fioriglio v. City of Atlantic City,* 963 F. Supp. 415, 424 (D.N.J. 1997) (noting that had the first case, a federal question, "rested on diversity jurisdiction, this Court would be inclined to follow the vast weight of authority and apply federal preclusion law").

The *Paramount* court reversed a district court's application of the ECD because the issuing court was federal.  The Court reasoned that, as a matter of policy, federal courts should have the right to determine the scope of their own judgments.  Thus, it concluded, if state law were to apply simply because the basis of jurisdiction in a case were diversity, such application of state law would destroy the basic principles of the Federal Rules of Civil Procedure.  *Id.* at 146.  We hold, based upon that principle, that the ECD does not apply, and FMCC is not barred from bringing this action.

Even if, however, the ECD applied, it would not bar the 2007 action.  The Third Circuit, in *Rycoline Prod., Inc. v. C & W Unlimited,* 109 F.3d 883, 887 (3d Cir. 1997), held that the ECD "does not give preclusive effect to a litigation that has not yet been concluded." *Rycoline,* 109 F.3d at 887; *see also Kaselaan & D'Angelo Assocs., Inc. v. Soffian,* 657 A.2d 705, 708 (N.J. Super. App. Div. 1996).  Because the 2006 action is still pending, the

13

ECD does not preclude FMCC from bringing the 2007 action.[15]

## VI.

Alternatively, the Defendants request that this Court stay the 2007 action pending a final resolution of both the bankruptcy proceeding and 2006 action.  This Court holds that a stay is not necessary and the actions are permitted to run concurrently because of: (1) the disparity of the parties involved in each of the suits; (2) the differing, independent legal issues of the three actions; and (3) a strong interest in avoiding further dissipation of Mays Landing's assets to the detriment of FMCC.

The power to stay a proceeding is derived from the inherent power of a court to efficiently manage its own docket.  *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).  Determining whether to stay an action requires the court to balance competing interests, including whether the actions: (1) involve the same parties; (2) involve the same issues; or (3) are pending in the

---

[15]   The Court further notes that even if Defendants had brought the motion under relevant federal law, it would have been denied.  Federal Rule of Civil Procedure 18 ("Rule 18") governs joinder of claims.  Rule 18(a) states, in pertinent part, that "a party asserting a claim to relief . . . *may* join, either as independent or as alternative claims, as many claims . . . as the party has against an opposing party."  Fed. R. Civ. P. 18(a)(emphasis added).  Accordingly, under federal law, FMCC would not be precluded from bringing the 2007 action, which contains allegations arising out of the same facts that underlie the 2006 action.

same court.  *See Local 478 Trucking & Allied Indus. Pension Fund v. Jayne*, 778 F. Supp. 1289, 1324 (D.N.J. 1991).  Additionally, a court should consider whether a stay would prejudice the plaintiff and if it would further the interest of judicial economy.  *Id.*

Although the bankruptcy proceeding, 2006 action, and 2007 action all derive from the same general set of facts, they involve different parties.  South Shore Ford is only a party to the bankruptcy proceeding.  Rudolph Chiorazzo and Mays Landing are the only Defendants named in both the 2006 and 2007 actions.[16]  Furthermore, although the 2006 and 2007 actions arise out of the same nucleus of facts, there are differences in the factual and legal issues.[17]  This Court has already determined that the 2007 claims are not dependent upon the final resolution of the bankruptcy or guaranty proceedings.  Finally, a stay of these proceedings could prejudice FMCC due to the purported continued dissipation Mays Landing's assets.  Therefore, the Court will deny Defendants' motion to stay.

---

[16]  Kathleen Chiorazzo is a co-Defendant in the 2006 action. Jason and John Chiorazzo are co-Defendants in the 2007 action.

[17]  Such legal differences include breach of contract, as alleged in the 2006 action, as opposed to fraud, as alleged in the 2007 action.  Factually, the 2007 action is focused upon the transfer of Mays Landing stock, whereas the 2006 action arises out of South Shore Ford's purported breach of its obligations to FMCC.

## VII.

Finally, Defendants request that the Court consolidate the 2007 and 2006 actions.  Federal Rule of Civil Procedure 42(a) gives courts discretion to consolidate simultaneously pending actions that involve a common question of law or fact to avoid unnecessary cost or delay.  The Court has "broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice."  *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993)(citation omitted).

Although this Court finds that the 2006 and 2007 actions contain some factual overlap, we decline to consolidate the actions for any purposes.  Discovery in the 2006 action is nearly complete, and pending before the Court are two summary judgment motions.  The 2007 action, however, is in its preliminary stages.  Currently a motion for discovery on an expedited basis is pending before Magistrate Judge Schneider.  It is not clear from the record what discovery, if any, has occurred in connection with the 2007 action.  Thus, the actions will remain independent due to the disparities in their procedural postures and the different legal issues involved.

16

**VII.**

For the reasons set for above, this Court will deny Defendants' motion to dismiss, stay, or consolidate.  The Court will enter an appropriate Order.


Dated: January 7, 2008


s/Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.

17